**Dorothy A. HAYWOOD,**
**Plaintiff–Appellant,**

v.

**NORTH AMERICAN VAN LINES,**
**INC., Defendant–Appellee.**

No. 96–3114.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1997.

Decided July 31, 1997.

---

Christopher C. Myers (argued), Samuel L. Bolinger, Myers & Geisleman, Fort Wayne, IN, for Plaintiff–Appellant.

Gary D. Johnson, Baker & Daniels, Fort Wayne, IN, Todd M. Nierman (argued), Baker & Daniels, Indianapolis, IN, Elliot R. Lewis, North American Van Lines, Incorporated, Fort Wayne, IN, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Dorothy Haywood filed a complaint in the district court alleging that North American Van Lines, her employer, had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to pay her overtime compensation. North American filed an answer in which it contended that it was not obligated to pay Ms. Haywood any overtime because she was a salaried exempt employee. North American subsequently filed a motion for summary judgment, which the district court granted. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

Ms. Haywood has been employed by North American since 1972. North American is in

the business of shipping household goods for consumers relocating within the United States or Canada. Since 1991 Ms. Haywood has worked as a Consumer Service Coordinator ("CSC") and is responsible for trying to resolve billing, damage to cargo and delay claims with North American's customers. The CSC's primary role is to ensure quality service to North American's customers and to prevent the customer's dissatisfaction with some aspect of his move from escalating into litigation. The CSC is the sole contact person between North American and its customers with respect to these claims. CSCs spend a majority of their time adjusting claims and negotiating with customers to try to settle their claims.

Ms. Haywood's complaint states that she is paid bi-weekly and receives an annual salary of $28,000. As a CSC, Ms. Haywood alleges, she generally works 45 to 50 hours per week, but has not received overtime pay for hours worked in excess of 40 per week. Also, roughly four times a year, CSCs are required to work on Saturday, in addition to their weekly schedules. On those occasions, employees are expected to work their shift or to find a qualified replacement to fill in. If an employee does neither, he is disciplined; he receives either a written or verbal reprimand. North American does not, however, adjust such employee's paycheck to account for these lost hours. An employee unable to work on a scheduled Saturday may need to "trade" Saturdays with another employee or to provide a monetary incentive to another employee to work his shift. This tradition of having "to pay your replacement" was one established by the workers themselves, but it has been going on for some time, and the company knows of the practice. Ms. Haywood is not able to work her Saturday shifts. Instead, she pays another CSC to cover for her.

Ms. Haywood filed this suit in the district court. She contends that she is not an exempt salaried employee under the FLSA and therefore is entitled to overtime compensation for the hours in excess of 40 that North American has required her to work. North American, in response, filed a motion for summary judgment. It submitted that Ms. Haywood is not entitled to any overtime because she is an exempt employee.

### B. *District Court Proceedings*

The district court applied the "short test"[1] to determine whether Ms. Haywood is exempt from the FLSA's usual requirement that an employer pay an employee overtime for the hours worked in excess of 40 hours per week. *See* 29 C.F.R. §§ 541.2, 541.214. First, the district court concluded that, as a matter of law, Ms. Haywood was paid on a salary basis for purposes of the FLSA. The court, analogizing Ms. Haywood's work to that of an insurance claims adjuster, also determined that Ms. Haywood's work fell within the category of administrative work and was directly related to North American's general business operations. Finally, the court concluded that, in resolving customer problems and negotiating with customers over the size of a settlement, Ms. Haywood's duties included the exercise of discretion and independent judgment and that she was not unduly circumscribed by North American's CSC guidelines. Because her work for North American met the three criteria of the short test, the district court concluded, she is exempt from the FLSA and is not entitled to overtime compensation. Consequently, the district court granted North American's motion for summary judgment.

## II

### DISCUSSION

We review de novo the district court's grant of summary judgment. *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1289 (7th Cir. 1997). We examine the record in the most favorable light to the nonmoving party and draw all reasonable inferences in such party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If, considered in this light, the record "could not lead a rational

---

**1.** The regulations lay out two tests for determining whether an employee is exempt under the FLSA: the "long test," applicable to those who earn less than $250 per week, and the "short test," applicable to those who earn $250 or more per week.

trier of fact to find for the non-moving party, there is no genuine issue for trial," and the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation and citation omitted).

▇▇▇ The FLSA generally requires employers to pay their employees at least one and a half times their regular wage rate for hours worked in excess of 40 in a given work week. *See* 29 U.S.C. § 207(a)(1). However, the FLSA exempts from these provisions "any employee employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary)." *Id.* § 213(a)(1). Because the statute delegates the power to define and delimit the scope of § 207 to the Secretary of Labor, her regulations are given "the force and effect of law." *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). Under this delegation of power, the Secretary has promulgated both a "long test," *see* 29 C.F.R. § 541.2(a)–(e), and a "short test," *see id.* § 541.214, for evaluating whether an employee qualifies as an exempt salaried employee who works in an administrative capacity-the exemption at issue in this case. Both parties agree that Ms. Haywood earned more than $250 per week and that the short test therefore governs our review. Section 541.214 provides that an individual who earns at least $250 per week qualifies as an exempt bona fide administrative employee if three conditions are met: (1) The employee is paid on a salary basis within the meaning of the FLSA; (2) the employee performs as his primary duty office or non-manual work "directly related to management policies or general business operations"; and (3) the employee's work "includes

**2.** Section 541.214 provides:
[A]n employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ... and whose primary duty consists of ... the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers, ... where the performance of such primary duty includes work requiring the exercise of discretion and independent judgment ... [, shall be] deemed

work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214.[2] Ms. Haywood contends that she fails each of these three conditions.

1.

Under the first prong of the short test, North American first must demonstrate that Ms. Haywood was paid on a salary or fee basis.

> According to the regulations, "[a]n employee will be considered to be paid 'on a salary basis' ... if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

*Auer v. Robbins,* —— U.S. ——, ——, 117 S.Ct. 905, 908, 137 L.Ed.2d 79 (1997) (quoting 29 C.F.R. § 541.118(a)).[3] In *Auer,* the Supreme Court of the United States accepted the Secretary's interpretation of the "subject to" language and held that the salary-basis test denies exempt status "when employees are covered by a policy that permits disciplinary or other deductions in pay '*as a practical matter.*'" *Id. at* ——, 117 S.Ct. at 911 (emphasis added). That standard is met if there is an actual practice of such deductions or if there is an employment policy that creates a significant likelihood of such deductions. *Id.*

Many of the issues of fact in this case are not in dispute. All agree that Ms. Haywood received a predetermined amount of compensation on a regular basis from North American. She received a biweekly paycheck which reflects 1/26 of her annual salary. Each such paycheck was identical, regardless of the number of hours she actually worked.

> to meet all the requirements in § 541.2(a) through (e).
> 29 C.F.R. § 541.214.

**3.** 29 C.F.R. § 541.212 defines "salary basis" for the administrative employee exemption. Section 541.212 incorporates by reference § 541.118, which sets out the definition of "salary basis" in connection with the executive employee exemption.

Nonetheless, Ms. Haywood contends, she was not paid on a salary basis for purposes of the FLSA. This is borne out, she submits, by her allegations that: (a) If she cannot work her shift on a mandatory Saturday and is unable to find a replacement, she is subject to non-monetary discipline; (b) if she misses work during the work week, she must make up the time; (c) if she needs to find a replacement worker for her Saturday shifts, she may need to pay him; and (d) if she does not make up any time for which she was absent, her salary would be deducted. We agree with the district court that none of Ms. Haywood's allegations, upon close examination, is sufficient to create a genuine issue of material fact. None of the first three allegations reasonably supports an inference that Ms. Haywood's pay is "subject to" reduction because of variations in the quality or quantity of Ms. Haywood's work; at first glance, the fourth allegation is more problematic. We shall examine each of them.

■ Ms. Haywood's first contention—that non-monetary discipline for failing to work a scheduled shift supports a finding of non-salaried status—finds no basis in the regulations. Nothing in the regulations suggests that an employee loses his exempt status simply because his employer disciplines him in a non-monetary fashion for failing to work during his scheduled time. The regulations prohibit monetary discipline of exempt employees; the amount of compensation may not be subject to a reduction because of variations in the quality or quantity of work. *See Auer,* —— U.S. at ——, 117 S.Ct. at 908; *cf. Bankston v. Illinois,* 60 F.3d 1249, 1253 (7th Cir.1995) ("Generally, an employer cannot show that an employee is exempt if the employer docks the employee's pay for partial day absences, violations of rules other than significant safety rules, and other barometers of the quantity or quality of the employee's work."). Indeed, if the regulations also were to prohibit non-monetary discipline for the quantity or quality of work an employee performs, employers would have no tool with which to combat chronic absenteeism, tardiness or poor performance. We do not believe that the Secretary intended to create such a result without so much as a word in the regulations.

Close examination of Ms. Haywood's second contention—that she must make up time before she is able to take the time off—reveals that it does not create a triable issue of fact. Ms. Haywood's deposition testimony amplified this allegation. She testified that it was her understanding that, if she wanted to take time off, she would need to make up the time before she left or would have a deduction made from her check to reflect this fact. North American's counsel followed up on this answer and asked why Ms. Haywood held this understanding. Ms. Haywood responded:

A. Because I was told that one instance when I asked to take off when my mother was very ill, and I needed to take off to get her out of the hospital to set up home care for her, and I asked Mr. Ianucilli if I could have the day off, and he said I would have to take a vacation day or make up any time, so I told him I would make up the time.

Q. Okay, but he didn't say that your salary would be deducted. He said-

A. No.

Haywood Dep. at 27–28. She also testified to several other such instances in which she needed to take a full day off to see her doctor. She was again given the choice between making up the time or taking sick leave. She made up the time.

Even if Ms. Haywood had chosen not to make up this time before taking it off, her salary would not have been reduced. Instead, she would have been issued a check in the same amount as always, and she would have had one fewer day of sick leave or personal leave. The regulations, moreover, allow employers to deduct from an exempt employee's paycheck for a full day's absence. *See* 29 C.F.R. § 541.118(a)(2) (deductions allowed when employee absents himself from work for a day or more for personal reasons); *id.* § 541.118(a)(3) (deduction allowed when employee absents himself from work for a day or more for reasons of sickness).

■ Ms. Haywood's third reason as to why she is not a salaried employee for pur-

poses of the Act likewise is without merit. She claims that, because she had to pay another employee to work in her stead on her mandatory Saturday shifts (3 to 4 per year), she was not salaried. She concedes that, when she does not personally work her Saturday shift (either because she finds a replacement or because no one works it), her salary from North American is not reduced. Similarly, when she does find a replacement to work for her, North American does not supplement that individual's income. Even were Ms. Haywood to fail to work or find a replacement for her Saturday shift (as she has done only once), she would be (and on one occasion was) subject only to non-monetary disciplinary measures.[4] As we have discussed, such nonmonetary discipline does not affect the FLSA status of an employee. We do not believe that this conclusion varies depending upon the voluntary arrangements that employees make with one another to cover each others' shifts.[5] The money that Ms. Haywood agrees to pay her replacement, if any, is simply not a deduction for purposes of the Secretary's regulations; it is a voluntary transaction between Ms. Haywood and another employee by which Ms. Haywood escapes the nonmonetary discipline to which she would be subjected if she neither found a replacement nor showed up for her shift.

Ms. Haywood's fourth and last argument under the first prong of the short test is that she was threatened with a pay reduction if she did not make up the time she was going to take off. This allegation, if supported, might preclude summary judgment. However, conclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment. *Darnell v. Target Stores*, 16 F.3d 174, 176–77 (7th Cir.1994). Examination of Ms. Haywood's answer to North American's motion for summary judgment reveals that this alle-

gation is no different from her second contention. As support for her allegation that she was told she would have to make up any time missed or would have her pay deducted, she cites two portions of her deposition. The first, her testimony about needing to take time off to care for her mother, we have treated fully above. The second citation to another portion of her deposition likewise does not support her contention. Ms. Haywood simply refers to a portion of her deposition testimony in which she testifies that her pay was never reduced for missing work, but that after being told that she would need to make up the time before taking a day off, she always would work extra hours before taking the time off.

In short, Ms. Haywood has failed to raise any genuine issue of fact that would allow a jury to infer that North American had in place any employment policy that, "as a practical matter," *see Auer v. Robbins*, —— U.S. ——, ——, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997), permitted deductions from pay for disciplinary reasons. We therefore conclude that Ms. Haywood was paid on a salary basis for purposes of the FLSA.

2.

Under the second prong of the short test, North American must prove that Ms. Haywood's duties consisted primarily of office or nonmanual work directly related to management policies or general business operations. *See Douglas v. Argo–Tech Corp.*, 113 F.3d 67, 71 (6th Cir.1997) (citing 29 C.F.R. § 541.2(a)(1), (e)(2)). There is no dispute between the parties that Ms. Haywood's work qualifies as office or nonmanual work for purposes of § 541.214 of the regulations. The issue is whether Ms. Haywood's work is "directly related to management policies or general business operations." 29 C.F.R.

---

**4.** This particular Saturday was a special shift called by a supervisor to clean up a backlog of work. From the corporation's standpoint, however, it was a regular shift because it was a foreseeable part of Ms. Haywood's job responsibilities.

**5.** We think it clear that North American could require its CSCs personally to work their mandatory Saturday shifts. If it did and an employee

failed to show up, that employee could be subject to nonmonetary discipline. Such discipline would not affect the exemption status of the employee. We fail to see how a more permissive policy—that a CSC can work his mandatory Saturday shift himself or find a qualified replacement to fill in for him-on the part of North American should subject the company to a change in the exemption status of its employees.

§ 541.214. We believe that the district court properly apprehended the regulations and concluded that Ms. Haywood's work falls within § 541.214's ambit. The regulations provide that work "directly related to management policies or general business operations" includes activities "relating to the administrative operations of a business." 29 C.F.R. § 541.205(a). "The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for, example, advising the management, planning, *negotiating, representing the company*, purchasing, promoting sales, and business research and control." *Id.* § 541.205(b) (emphasis added).[6] " 'Servicing' a business within the meaning of 29 C.F.R. § 541.205(b) denotes employment activity ancillary to an employer's principal production activity...." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 904–05 (3d Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).

Ms. Haywood stated in her deposition testimony that she spent her time negotiating with clients and their attorneys and settling billing, delay and cargo damage claims.[7] Further, Ms. Haywood testified, the CSC is often the sole contact between North American and its customers in such disputes. CSCs represent their employer, North American, in the discussions between North American and its customers. These are the types of classic administrative functions the regulation, 29 C.F.R. § 541.205, contemplates. They are also functions that are ancillary to North American's business. North American's business is moving household goods from one location to another. Ms. Haywood's duties of negotiating with customers, when there was a problem with production, is ancillary to the production process of actually moving the household goods. She performed functions somewhat analogous to those performed by claims agents

and adjusters, who are specifically mentioned by the regulations as meeting the "directly related" test. *See id.* § 541.205(c)(5); *see also Reich v. American Int'l Adjustment Co.*, 902 F.Supp. 321, 324 (D.Conn.1994) (contrasting the work performed by adjusters, who negotiate and settle claims, with work performed by appraisers, who investigate and find facts, in concluding that appraisers are not exempt); *cf. Douglas v. Argo–Tech Corp.*, 113 F.3d 67 (6th Cir.1997) (finding employee who handled employee grievances was an exempt administrative employee).

The work Ms. Haywood performed, in order to be directly related to general business operations, must also be of substantial importance to the operation of the business. 29 C.F.R. § 541.205(a); *Cooper Elec.*, 940 F.2d at 902. By any measuring stick, this test is easily met. Although Ms. Haywood's assignment at North American does not involve the principal service of the corporation, moving goods, and may properly be characterized as "ancillary," it is nevertheless important to the success of the firm. As Ms. Haywood notes, the corporation's objective is a "happy move of clients' household goods." Appellant's Br. at 17. If the move is not "happy," the corporation will experience not only increased litigation costs but a reduced customer base. Ms. Haywood's job was to keep the move "happy." Ms. Haywood settled over $100,000 in cargo claims in 1994 alone. We have no difficulty agreeing with the district court that Ms. Haywood's duties fulfill the second prong of the short test.

### 3.

Finally, under the last prong of the short test, we must evaluate whether there is a material issue of factual dispute over whether Ms. Haywood's duties "include[d] work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214. "In general, the exercise of discretion and

---

**6.** We reject Ms. Haywood's suggestion that she is a production rather than an administrative employee. North American's "product" is moving goods from point A to point B. There is no evidence that Ms. Haywood is involved in producing this good in any way, and the cases on which she relies involving employees who were production employees are therefore inapposite.

**7.** North American's counsel asked Ms. Haywood, "you are doing this daily. This is what—you are constantly negotiating, settling, dealing with people and/or lawyers?" Ms. Haywood responded, "Yes." Haywood Dep. at 125.

independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." *Id.* § 541.207(a). The Secretary has warned, however, that misapplication errors in this prong have occurred most frequently from the failure to distinguish discretion and judgment from the use of skill. *Id.* § 541.207(c)(1). "An employee who merely applies his knowledge in following prescribed procedures or determining which procedures to follow ... is not exercising discretion and independent judgment within the meaning of § 541.2." *Id.* The regulations provide several examples of individuals who do not exercise independent judgment, such as inspectors, examiners and graders. Many of these examples involve an employee who must apply a well-established, specific and constraining standard in assessing the situations he faces in his daily work.

Ms. Haywood contends that this description accurately describes the type of work she was doing. We cannot accept this contention. As a CSC, Ms. Haywood spent much of her time on the telephone with customers who had complaints either because their cargo had been delayed or damaged or because they had billing complaints. She would conduct a thorough investigation over the telephone, including asking the customer a variety of questions and reviewing customer receipts and billing documents. After she had determined that she had enough information, she would negotiate with the customer to try to reach a settlement. According to Ms. Haywood's deposition testimony, the settlements reached could vary depending upon the CSC with whom the customer was negotiating. She testified that no two CSCs would reach the same settlement on the same case. Ms. Haywood also stated in her deposition that, with respect to billing problems,

she operated "freelance" and that management deferred to her decisions. Her own testimony, then, supports North American's position that CSCs are given some latitude in negotiating and settling claims and that Ms. Haywood's duties were indicative of the exercise of discretion and independent judgment. *See* 29 C.F.R. § 541.207(a). So too does the job description for CSCs, which Ms. Haywood agreed in her deposition was an accurate description of her duties. Although the job description does not use the term "negotiate," it lists several "essential" job functions that suggest the importance of negotiation to successful job performance and that indicate the discretion a CSC is given. Among a CSC's essential functions are to "*resolve* and provide assistance with problems," "investigate and resolve" billing problems, and "*arbitrate* delay compensation for customers." R.34, Ex.D.

The fact that Ms. Haywood had supervisors who reviewed her work does not defeat her exempt status under the FLSA. Section 541.207(e) provides:

> The term "discretion and independent judgment" as used in the regulations ... does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.

29 C.F.R. § 541.207(e)(1). Although North American does provide guidelines to the CSCs, we have examined these guidelines and do not find that they adequately constrain a CSC's actions to prevent him from exercising independent judgment.[8]

From the record presented to us on appeal, we cannot find any evidence that cre-

---

8. As the word "guidelines" suggests, the guidelines provide an overview of what the CSCs should try to do when negotiating with customers. In fact, an attachment to the guidelines makes clear that not all the answers are in the guidelines: "Please remember these are guidelines to try to stay within but there is always going to be a customer that is much more demanding and will require more attention and compensation. Always seek advice from your

leader and assistant leader in those cases." R.34, Ex.F. Additionally, our examination of the guidelines makes clear that a CSC has considerable latitude under the guidelines to negotiate a settlement. For example, a supplement to the guidelines informs CSCs that, when they are "dealing with load problems or compensation, [they are to] just use [their] common sense." R.34, Ex.P at 3.

ates a genuine issue of material fact that would preclude summary judgment. Ms. Haywood, as a CSC, meets the short test as set out in the regulations. We therefore agree with the district court that Ms. Haywood is an exempt salaried administrative employee as a matter of law and that summary judgment for North American was therefore appropriate.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.