**Gul RONEY, Plaintiff,**

v.

**ILLINOIS DEPARTMENT OF TRANSPORTATION, Defendant.**

No. 99 C 4941.

United States District Court, N.D. Illinois, Eastern Division.

July 11, 2005.

Deidre Baumann, Baumann, Shuldiner & Lee, Chicago, IL, for Gul Roney, Plaintiff.

Richard J. Cho, Illinois Attorney General's Office, Chicago, IL, for Illinois Department of Transportation, Defendant.

### MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Before the Court is Defendant Illinois Department of Transportation's (hereinaf-

ter "IDOT") motion for summary judgment. For the reasons set forth below, the Court grants IDOT's motion.

### BACKGROUND FACTS

Plaintiff Gul Roney (hereinafter "Roney"), who is of Indian descent, began working for IDOT's District 1, Bureau of Construction[1] in 1979 as an Engineering Technician II. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 56.) In February of 1992, Roney was promoted to the position of Engineering Technician IV.[2] (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 6.) Roney's payroll title was Resident Technician ET–IV. (*Id.* ¶ 8.)

On July 27, 1999, Roney initiated the instant lawsuit when he filed his initial complaint alleging national origin discrimination, retaliation, harassment, and a hostile work environment on the part of IDOT in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[3] (Def.'s Ex. C.) Roney brings these claims averring that IDOT subjected him to various discriminatory and retaliatory acts, including constructive discharge, because of his previous participation in a lawsuit he filed in 1995 in which he also alleged national origin discrimination and retaliation claims against IDOT. (2nd Am.Complt.)

*See Roney v. Ill. Dep't of Transp.*, No. 95 C 4240, 1997 WL 94718 (N.D.Ill. Mar. 3, 1997). In that lawsuit, IDOT ultimately won a jury verdict in its favor which the Seventh Circuit subsequently affirmed. *See Roney v. Ill. Dep't of Transp.*, 191 F.3d 456 (7th Cir.1999)(unpublished disposition).

On April 7, 2000, IDOT filed a motion for summary judgment in this case alleging that Roney's discriminatory and retaliatory claims were barred based on the doctrines of res judicata and collateral estoppel. (Dkt. Nos. 10–14.) The District Judge granted IDOT's motion to the extent that it barred Roney's discriminatory and retaliatory claims that occurred prior to July 2, 1997. (Dkt. No. 15.) Accordingly, the basis of the subject lawsuit is Roney's claims that occurred from July 2, 1997 through November 4, 1999, the date of his alleged constructive discharge. (2nd Am.Complt.¶ 11.)

Roney filed his Second Amended Complaint on August 15, 2000 alleging national origin discrimination, retaliation, harassment, constructive discharge and a hostile work environment. (Dkt. No. 21.) IDOT now moves for summary judgment on Roney's claims.

---

1. IDOT's Bureau of Construction is responsible for building federal and state highways and bridges. *Roney v. Ill. Dep't of Transp.*, No. 95 C 4240, 1997 WL 94718, at *1 (N.D.Ill. Mar. 3, 1997).

2. During the relevant period, Engineering Technicians reported to Resident Engineers who in turn reported to Lee Schmidt (hereinafter "Schmidt"), the Area Construction Supervisor. (Fulgenzi Aff. ¶¶ 11–13.) Schmidt reported to Robert Rollins (hereinafter "Rollins"), the Bureau Chief of Construction. (*Id.* ¶¶ 10–11.) Rollins in turn reported to Bruce Dinkheller (hereinafter "Dinkheller"), the District One Project Implementation Engineer. (*Id.* ¶¶ 9–10.) Dinkheller reported to John Kos (hereinafter "Kos"), the District Engineer for District One. (*Id.* ¶¶ 6, 9.) Kos re-

ported to the Director of Highways of IDOT. (*Id.* ¶ 7.) Giovanni Fulgenzi (hereinafter "Fulgenzi") is the Personnel Services Manager for IDOT's District 1, Bureau of Construction. (Fulgenzi Aff. ¶ 1.)

3. On April 28, 1998, Roney filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") alleging national origin discrimination, retaliation, harassment, and a hostile work environment on the part of IDOT. (Def.'s Ex. B.) On February 14, 2000, Roney filed a second Charge of Discrimination with the EEOC in which he alleged not only discriminatory and retaliatory conduct on the part of IDOT, but also that he had been constructively discharged on November 4, 1999. (Pl.'s Ex. C.)

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party had produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Finance Corp. v. Onwuteaka,* 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National–Louis Univ.,* 137 F.3d 962, 964 (7th Cir.1998). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC,* 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505, 91 L.Ed.2d 202.

■ This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *See Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). "[S]ummary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent." *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir.1985)(*citing Kephart v. Inst. of Gas Tech.,* 630 F.2d 1217, 1218 (7th Cir. 1980)). Finally, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Freeman v. Madison Metro. Sch. Dist.,* 231 F.3d 374, 2000 WL 1640952, *3 (7th Cir.2000)(*quoting Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202).

## ANALYSIS

### I. RETALIATION CLAIM

Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under this statute. 42 U.S.C. § 2000e–3(a). Thus, to demonstrate that an employer has violated this provision of Title VII, a plaintiff may present either direct or indirect evidence of the employer's retaliatory intent. *Williams v. Waste Management of Ill., Inc.,* 361 F.3d 1021, 1031 (7th Cir.2004); *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524, 531 (7th Cir.2003); *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir.2002).

### A. DIRECT METHOD

Under the direct method, a "plaintiff must present direct evidence of (1) a statu-

torily protected activity; (2) an adverse employment action taken by the employer[4]; and (3) a causal connection between the two." *Williams,* 361 F.3d at 1031 (*citing Sitar v. Ind. Dep't of Transp.,* 344 F.3d 720, 728 (7th Cir.2003)); *Haywood,* 323 F.3d at 531 (*citing Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640, 644 (7th Cir.2002)). If the plaintiff's evidence is "contradicted, the case must be tried unless the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, 'in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm.'" *Haywood,* 323 F.3d at 531 (*quoting Stone,* 281 F.3d at 643–44); *see also Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

Roney avers that IDOT subjected him to a multitude of adverse employment actions in retaliation for instituting his prior lawsuit against IDOT. (Pl.'s Resp. at 7–12, 20–22, Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 78, 95.) For instance, he alleges that he was (1) denied overtime, (2) prevented from utilizing his skills as a Resident Engineer, (3) moved from one construction job site to another every six months, (4) received lower salary raises, (5) did not have his positive letters of recommendation and performance evaluations recognized by IDOT which resulted in the denial of a merit increase, (6) was watched closely by other Resident Engineers, (7) had his Resident Engineer's mailbox removed, (8) had his name removed from the list of Resident Engineers, (9) had his performance evaluations altered and documents removed from his personnel file, (10) was disciplined on fabricated grounds for an alleged incident that occurred in May of 1999 and received an oral warning for threatening and verbally abusing his Resident Engineer, (11) was disciplined on fabricated grounds a second time for an alleged incident that occurred in July of 1999 and received a notice of suspension pending discharge for falsification of overtime, (12) was subjected to an improper disciplinary policy and procedure related to his two disciplinary actions, and (13) was constructively discharged.[5] (*Id.*) Moreover, Roney claims that he was also subjected to adverse actions when IDOT illegally destroyed relevant job site records, falsely reported to the Illinois State Police that he had been terminated which resulted in an unwarranted criminal investigation, maliciously reported to the Illinois Secretary of State that he was required to fill out a Statement of Economic Interest which resulted in threats of termination, refused to allow him the use of a state vehicle, even though a vehicle was provided to every other Resident Engineer working under Schmidt, assigned him to dangerous painting operations for which he was not properly trained, and falsely reported to the Illinois Department of Employment Security that he had been terminated which resulted in the denial of employment benefits. (*Id.*)

"Title VII does not forbid every act of invidious discrimination that an employer might commit against an employee; the act must be 'with respect to [the employee's] compensation, terms, conditions, or privileges of employment.'" *Herrnreit-*

---

4. "[The Seventh Circuit] observed in *Herrnreiter* [ ], decided after *Stone* [ ], that retaliation claims need not always involve an adverse action directly related to *employment,* just an adverse action by an employer of some kind." *Williams,* 361 F.3d at 1031 n. 4 (cit-

ing *Herrnreiter v. Chicago Housing Authority,* 315 F.3d 742, 745 (7th Cir.2002)).

5. Roney's alleged constructive discharge will be discussed in footnote 27 of Section III of this opinion.

*er v. Chicago Housing Authority,* 315 F.3d 742, 745 (7th Cir.2002)(*citing* 42 U.S.C. § 2000e–2(a)(1)). Case law generally defines this as either "'a tangible employment action,' that is, 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,' (*Id.* at 744) *citing Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), or as a 'materially adverse employment action.'" *Id.* (citations omitted). Some examples of adverse employment actions include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indicies that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993). In order to demonstrate an adverse employment action, "the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Haywood,* 323 F.3d at 531. To be actionable, adverse employment actions must be "materially adverse" and "more than a 'mere inconvenience or an alteration of job responsibilities.'" *Oest v. Ill. Dep't of Corrections,* 240 F.3d 605, 612 (7th Cir.2001)(*quoting Crady,* 993 F.2d at 136). However, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996) (citation omitted).

The Seventh Circuit has generally recognized three categories of cases that constitute "adverse employment actions." *Herrnreiter,* 315 F.3d at 744. These cases include (1) "Cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including, . . . termination of employment," (2) "[c]ases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted," (2a) "[a] variant of category 2 is where the employee's job is changed in a way that injures his career, just as in the cases in that category, except that there is no transfer," and (3) "[c]ases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the *conditions* in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Id.* (Emphasis in original.)

Upon a review of the record, the Court finds Roney has failed to demonstrate that he was subjected to "materially adverse" employment actions because the subject actions do not qualify as adverse actions under case law or he has failed to produce evidence which supports his claims. Rather, as demonstrated by the record, many of Roney's claims regarding adverse employment actions are based on his own uncorroborated, speculative and conclusory testimony and statements. *See e.g., Haywood v. North Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997)("[C]onclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment."); *Patterson v. Chicago Ass'n for Retarded Citizens,* 150 F.3d 719, 724 (7th Cir.1998)("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion.")(*quoting Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir.1991)); *Fed. Nat'l Mortgage Assoc. v. Panice,* No. 93 C 7730, 1996 WL 361549, at *3 (N.D.Ill. June

26, 1996)("speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment") (citation omitted); *see also FDIC v. Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986)("Neither frivolous assertions nor mere suspicions will suffice to justify a denial of summary judgment."); *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762–63 (7th Cir.2001)("It is simply not true ... that if a litigant presents an overload of irrelevant or non-probative facts, somehow the irrelevancies will add up to relevant evidence of discriminatory intent. They do not; zero plus zero is zero.")

Next, even if Roney can establish a prima facie case under the direct method by demonstrating that he was subjected to "materially adverse" employment actions which were causally connected to his protected activity, IDOT has presented evidence which clearly demonstrates that it would have taken the same subject actions regardless of Roney's protected activity because its actions were based on his work-related performance and behavior problems. (Def.'s LR56.1(a)(3) St. ¶ 190.) *See e.g., Haywood*, 323 F.3d at 531 (if a plaintiff's evidence is "contradicted, the case must be tried unless the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, 'in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm.'") (citation omitted).

■ Roney initially asserts that IDOT subjected him to an adverse employment action when Schmidt assigned him to perform inspection duties at IDOT's job sites because he was prevented from utilizing his training, experience and skills as a Resident Engineer. (Pl.'s Resp. at 9, 12–13.) Roney thus avers that the reassignment to inspection duties was adverse because he had more experience, seniority and educational qualifications than the Resident Engineers to whom he was assigned. (*Id.* at 13.) Moreover, Roney claims he was subjected to an adverse employment action because he was assigned to work for a new Resident Engineer every six months. (*Id.* at 20.)

Roney's claims of adverse employment actions with regard to his assignment to inspection duties, his working for Resident Engineers who were less qualified, and his transfer to a new Resident Engineer every six months are unavailing because they do not constitute "materially adverse" employment actions. In fact, these are exactly the type of "mere inconvenience[s] or [ ] alteration of job responsibilities" that the Seventh Circuit has rejected as sufficient to constitute adverse employment actions. *Crady*, 993 F.2d 132, 136; *see e.g., Reed v. Manteno Sch. Dist. No. 5*, No. 00 C 0980, 2002 WL 731780, at *4 (N.D.Ill. April 25, 2002)("When a person experiences a job transfer without a loss in salary or benefits, ..., she must show a materially adverse change in the terms and conditions of employment that are more disruptive than a mere inconvenience of an alteration of job responsibilities.") (citation omitted); *Munjal v. Bd. of Trustees of the Univ. of Ill.*, No. 97 C 2222, 1998 WL 895660, at * 5 (N.D.Ill. Dec. 9, 1998)("Being required to report to another employee that the plaintiff regards as beneath him in stature is not actionable under Title VII.")(*citing Flaherty v. Gas Research Institute*, 31 F.3d 451, 457 (7th Cir.1994)); *Jackson v. Int'l Brotherhood of Teamsters, Local Union No. 705, AFL–CIO*, No. 02 C 2745, 2004 WL 1718635, at *7–8 (N.D.Ill. July 30, 2004)(holding that reassignment is not an adverse employment action)(*citing Kersting v. Wal–Mart Stores, Inc.*, 250 F.3d 1109, 1119 n. 2 (7th Cir.2001)); *Flaherty*, 31 F.3d at 457 ("the loss of an existing title also would not satisfy [the adverse

employment action] element of the prima facie case."); *O'Neal v. City of Chicago,* 392 F.3d 909, (7th Cir.2004)("being shifted to an essentially equivalent job that [an employee does] not happen to like as much does .not [establish a Title VII claim].")(*quoting Place v. Abbott Laboratories,* 215 F.3d 803, 810 (7th Cir.2000)). Accordingly, because Roney cannot show that his reassignments resulted in a loss of salary or benefits or a change in his working hours, he cannot establish that he was subjected to an adverse employment action.[6] *Kersting,* 250 F.3d at 1119 n. 2; *Reed,* 2002 WL 731780, at *4–5 (*citing Crady,* 993 F.2d at 136).

It bears noting that IDOT assigned Roney to work as a Resident Technician/Inspector because of work performance issues and personality conflicts he had with other Resident Engineers.[7] (Def.'s LR56.1(a)(3) St. ¶ 86.) IDOT was specifically concerned with Roney's ability to accept direction from his superiors, his inability to control his anger in certain situations, his disrespect of his Resident

Engineer, his overuse of sick time, his excessive use of unnecessary or unworked overtime, his inability to timely complete paperwork in order to finalize a project, his late arrival and early departure to and from . work, his . taking unusually long breaks, and his manipulation of other workers with respect to taking time off and overtime requests. (*Id.* ¶ 190.) Accordingly, Schmidt did not assign Roney to work as a Resident Engineer because of a lack of trust due to Roney's work-related performance problems.[8] (*Id.* ¶ 93.)

Roney next claims that he was denied the opportunity to work overtime hours because IDOT theoretically permitted him to work three hundred and ninety hours of overtime each six month period from July 1, 1997 through December 31, 1997. (Pl.'s Resp. at 8–9, Def.'s Resp. to Pl.'s LR 56.1(b)(3)(B) St. ¶ 204.) He avers that he had no control over his overtime hours because he was not working in the capacity of. a Resident Engineer; therefore, he was not able to. benefit from working overtime hours because Resident Engineers gener-

---

6. Roney also fails to articulate those specific skills he was prevented from utilizing while performing · inspection duties · and how · the failure to utilize a particular skill diminished his future career prospects. (*See* Pl.'s Resp. at 9.)

7. Schmidt changed Roney's working title to Resident Technician/Inspector. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 91.)
 Schmidt testified that he assigned Roney to inspection duties for as long as he did because of problems with Roney's performance and erratic behavior as well as the fact that other Resident Engineers requested that Roney be removed from their job sites. (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 20.) For example, Shahatit (Palestinian), Alhamed (Palestinian), Balakrishnan (Indian), J. Patel (Indian), and Masseya (national origin not in record) who were Resident Engineers requested that Roney be removed from their job sites. (Def.'s LR56.1(a)(3) St. ¶¶ 61–62, 64, 87.) Thus, Schmidt, Rollins and Dinkheller reassigned Roney in order to find an appro-

priate "fit" so that he could continue working in the Bureau of Construction. (*Id.* ¶ 86.) They also reassigned Roney based on the work load at the job sites. (*Id.*)

8. Roney claims that Schmidt made it clear that the trust issues arose out of his lawful complaints of harassment and unfair treatment as well as the fear Schmidt and others that Roney would file a lawsuit. (Pl.'s Resp. at 19.) However, when questioned about this issue, Schmidt testified that his mistrust was based on Roney's erratic behavior. (Def.'s LR56.1(a)(3) St. ¶ 93.)

Roney also contends that· because he was an Engineering Technician IV, he should be assigned to work as a Resident Engineer. (Def.'s LR56.1(a)(3) St. ¶ 71.) The record demonstrates, however, that not all Engineering Technician IVs are assigned to work as Resident Engineers and there have been other Engineering Technicians IVs who have been assigned to work under other Resident Engineers. (*Id.* ¶¶ 72–73.)

ally made decisions regarding overtime work for themselves. (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 203, Pl.'s LR56.1(b)(3)(B) St. ¶ 205.)

■ Herein, Roney's allegations of being denied overtime hours are vague and based on speculation. *See e.g., Market v. Ill. Bell Telephone Co.,* No. 01 C 3841, 2003 WL 22697284, *8 (N.D.Ill. Nov. 13, 2003)(the plaintiff's claim was not supported in the record because the plaintiff "has made no effort to demonstrate the extent of any financial loss [ ]he would have suffered as a result of the alleged overtime denial, and the Court has no basis to evaluate whether any such loss would be significant enough to constitute a 'materially' adverse action."); *see also Utomi v. Cook County,* No. 98 C 3722, 2001 WL 914465, at *8 (N.D.Ill. Aug. 14, 2001)(holding that no adverse employment action where the employer occasionally denied the plaintiff overtime and the plaintiff failed to demonstrate the extent of the financial loss allegedly suffered with specificity). Thus, while Schmidt admitted that he denied an overtime request for both Imad Shahatit (hereinafter "Shahatit"), a Resident Engineer, and Roney to work more than twenty-five hours in a two week period on a bridge construction project (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 139), he based his denial on the fact that the assignment of overtime work is within IDOT's discretion and whether overtime work is available is dependent on the type of construction work being performed at any given time and must be supported by a legitimate explanation. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 80–81.) *See e.g., Cisneros v. City of Chicago,* No. 00 C 8059, 2002 WL 31356404, *6 (N.D.Ill. Oct. 17, 2002)(finding that the denial of overtime was not an adverse employment action because the plaintiff received a substantial amount of overtime and she was not entitled to work overtime every time she requested it); *see also Tyler v. Ispat Inland,*

*Inc.,* 245 F.3d 969, 972 (7th Cir. 2001)("[e]ven the denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary.") (citations omitted). It bears noting that Roney admitted that, at various times, IDOT required prior approval of overtime in excess of two hundred and fifty hours in a six month period or prior approval whenever a Resident Engineer was going to exceed twenty-five hours in a two week period. (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 203.) Accordingly, Roney's allegation of being denied overtime work does not constitute an adverse employment action and, moreover, is principally based on his vague, speculative and unfounded allegations.

■ Roney also alleges that he was denied an exceptional performance merit raise because his positive letters of recommendation and performance evaluations were not recognized by IDOT (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 58, 60, 68) and he was the lowest paid Engineering Technician IV in District 1, Bureau of Construction. (Def.'s LR56.1(a)(3) St. ¶ 104.) Roney's contention regarding his merit raise is barred because it is not an issue relevant to the July 2, 1997 through November 4, 1999 time period covered by the subject lawsuit since the alleged wrongdoing occurred in October of 1996. (Pl.'s LR56.1(b)(3)(B) St. ¶ 68, Dkt. No. 15.) *See e.g., Munjal,* 1998 WL 895660, at *5 ("the fact that plaintiff did not receive a merit increase for 1994–95 does not amount to a materially adverse employment action.") Next, with respect to Roney's assertion that he is the lowest paid Engineering Technician IV, he has presented no evidence that would demonstrate his salary was the result of retaliatory motives of

IDOT. Rather, as shown by the evidence in the record, IDOT had concerns with Roney's work-related performance and behavior issues which may, in fact, account for his lower salary. Moreover, while Roney claims he was denied salary increases similar to the other Engineering Technician IVs, he could not identify those other employees who received larger salary increases and he also admitted that he received salary increases. (Def.'s Ex. I at 66–68, Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 103.)

■ Roney further asserts that he was disciplined on fabricated grounds for an incident that occurred on May 10, 1999 for which he received an oral warning for allegedly threatening and verbally abusing his Resident Engineer Shahatit. (Pl.'s Resp. at 19.) For instance, on May 10, 1999, Shahatit assigned Roney the job of inspecting the contractor's painting on a construction project. (Def.'s LR56.1(a)(3) St. ¶ 112.) Shahatit looked for Roney at the location on the job site where he assigned him to work, but he could not find Roney and waited for him for half an hour. (Id. ¶ 113.) Shahatit went to the other locations on the job site and the field office to look for Roney, but he could not find him. (Id. ¶ 114.) When Shahatit later found Roney at the assigned location on the job site, he asked him where he had been. (Id. ¶ 115.) Roney told Shahatit that he had been at the assigned location, but Shahatit told Roney not to deny that he had not been there. (Id. ¶ 116.) Roney then started screaming and yelling at Shahatit in front of contractors and painters who were working on the job site. (Id. ¶ 117.)

Roney also shook his hand and his head at which time Shahatit was afraid that Roney might hit him. (Id. ¶ 118.)

On May 19, 1999, Shahatit issued a disciplinary report to Roney for the May 10, 1999 incident.[9] (Def.'s LR56.1(a)(3) St. ¶ 120.) The disciplinary report initiated by Shahatit resulted in Roney being given an oral warning that was approved by Dinkheller, Rollins, Schmidt, and Fulgenzi.[10] (Id. ¶ 130, Doc. No. 000154.)

Roney has failed to produce any evidence that would even hint at the possibility that IDOT falsely fabricated the May 10, 1999 incident. Moreover, the record demonstrates that other IDOT employees, which include employees outside Roney's protected class, have received oral warnings or more severe discipline as a result of threatening or verbally abusing a co-worker or supervisor. (Def.'s LR56.1(a)(3) St. ¶ 135.) Accordingly, Roney's pure speculation herein is not enough. See e.g., Haywood, 323 F.3d at 532 ("Other than 'pure speculation' that the defendant's senior manager was actually lying in wait for the opportunity to punish the plaintiff for having filed a complaint of race discrimination against a completely different group of people ..., the plaintiff provides nothing to establish causation."); see also Oest, 240 F.3d at 613 ("Nor do we believe that the oral or written reprimands received by [the plaintiff] under the [defendant's] progressive discipline system can be considered, ..., as implicating sufficiently 'tangible job consequences' to constitute an independent basis of liability under Title VII.") (citation omitted);

9. The president of one of the contractor's who witnessed the incident provided a written statement. (Def.'s LR56.1(a)(3) ¶ 121, Def.'s Ex. P.) In his statement he indicates that he witnessed what seemed to be an argument between Roney and Shahatit and stated that "[a]lthough [he] couldn't hear what was said because of the noise from the air compressor,

[Roney] was yelling and screaming at [Shahatit] and was moving his arms during the argument." (Id.)

10. Jan van Blommesteyn, Chief of the Bureau of Administrative Services also approved the oral warning. (Def.'s LR56.1(a)(3) St. ¶ 120.), Doc. No. 000154.

*Sweeney v. West,* 149 F.3d 550, 556 (7th Cir.1998)("[a]bsent some tangible job consequence accompanying [the] reprimands, we decline to broaden the definition of adverse employment action to include them."); *Kersting,* 250 F.3d at 1118 (holding that oral and written warnings did not constitute materially adverse employment actions).

■ Roney next avers that he was again disciplined on fabricated grounds for an incident that occurred on July 10–11, 1999 for which he received a suspension pending discharge for allegedly falsifying his time card to reflect that he had worked overtime hours. (Def.'s LR56.1(a)(3) St. ¶ 136.) [11] For instance, on July 10–11, 1999, Shahatit worked overtime and had previously instructed Roney not to work on these two days (i.e., Saturday and Sunday). (*Id.* ¶ 138.) Shahatit worked on those two days, but even though Roney did not work on those days, he still submitted a time card which indicated he had worked overtime hours on those days.[12] (*Id.* ¶ 140.) Shahatit kept track of Roney's time and submitted it to Schmidt. (*Id.* ¶ 141.) Schmidt discussed Roney's time card with Shahatit because Roney's time card did not match Shahatit's record of Roney's time and Shahatit saw that Roney put down overtime that he had not worked.[13] (*Id.* ¶ 142.)

On July 21, 1999, Shahatit issued a disciplinary report to Roney for the July 10–11, 1999 falsification of overtime and subsequently Roney received a notice of a pre-disciplinary meeting regarding the disciplinary report. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 145, 149.) Roney attended the pre-disciplinary meeting on September 24, 1999 and was represented by an attorney. (*Id.* ¶ 150.) The pre-disciplinary meeting was continued to November 4, 1999 at Roney's attorney's request. (*Id.* ¶ 151.) At the November 4, 1999 pre-disciplinary meeting, Roney's attorney submitted his response to the July 21, 1999 disciplinary report. (*Id.* ¶ 153.) Roney received a notice of suspension pending discharge at this pre-disciplinary meeting which was approved by Schmidt, Rollins, Dinkheller and Fulgenzi. (*Id.* ¶¶ 154–55.) Roney submitted his letter of resignation on November 4, 1999.[14] (*Id.* ¶ 164.)

Based on the evidence in the record, Roney has again failed to demonstrate that the July 21, 1999 disciplinary report which resulted in the notice of suspension pending discharge was fabricated or predicated on a retaliatory motive on the part of IDOT. *See e.g., Haywood,* 121 F.3d at 1071 ("[C]onclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment.");

---

11. Roney's time card reflected that he worked nine hours of overtime on July 10, 1999 and five hours of overtime on July 11, 1999. (Doc. No. 00095.)

12. IDOT offers the written statement of one of its Resident Engineers to corroborate that Roney did not work on July 10, 1999 because he was not seen on the job site between the hours of 11:30 a.m. and 3:30 p.m. (Def.'s Ex. Q.) Roney, on the other hand, offers the statement of one of IDOT's Senior Resident Engineers, to corroborate that Roney was seen on the job site on the morning of July 10, 1999. (IDOT 001601.) Herein, the problem with Roney's proffered statement is that it does not

establish that he was on the job site the entire day of July 10, 1999.

13. IDOT's personnel policies manual states that overtime is to be worked only when it is authorized. (Fulgenzi Aff. ¶ 24; *see also* Doc. No. 000459.)

14. Upon receipt of Roney's resignation, the disciplinary process ceased and the November 4, 1999 notice of suspension pending discharge was expunged from Roney's personnel file. (Fulgenzi Aff. ¶ 54.) Accordingly, no discipline resulted from the July 21, 1999 disciplinary report and no record of it exists in Roney's personnel file. (*Id.* ¶¶ 53–54.)

*Patterson,* 150 F.3d at 724 ("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion.") (citation omitted); *Fed. Nat'l Mortgage Assoc.,* 1996 WL 361549, at *3 ("speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment") (citation omitted); *see also FDIC,* 781 F.2d at 1267 ("Neither frivolous assertions nor mere suspicions will suffice to justify a denial of summary judgment."). Thus, while Roney avers that IDOT illegally destroyed the job site records that would have verified that he worked overtime on July 10–11, 1999 (Pl.'s Resp. at 20), he has failed to demonstrate that these records would in fact contain the requisite information required to establish that fact.[15] Roney's next contention that IDOT admitted that the charges levied against him for falsification of overtime hours was erroneous is equally unavailing. (*Id.*) See discussion at page 16, Supra, including footnotes 11 to 13. As another example, the record reflects that the Department of Central Management System personnel policy may have been cited in error in the falsification of overtime disciplinary charge against Roney because it did not apply to his job classification. (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 146.) Moreover, Roney's allegation that IDOT expunged documents from his personnel file because it determined that he had not been involved in the disciplinary incident of July 10–11, 1999 (Pl.'s LR56.1(b)(3)(B) St. ¶ 191) flies in the face of the evidence herein because IDOT never admitted that the charges against Roney were erroneous. (*Id.*)

■ Next, Roney alleges that IDOT did not follow its own disciplinary policies and procedures with regard to the disciplinary measures instituted against him. (Pl.'s Resp. at 20–21, Pl.'s LR56.1(b)(3)(B) St. ¶¶ 104–20, 157–92.) Even assuming *arguendo* that Roney is correct in his assertion that IDOT failed to follow its own disciplinary policies and procedures, he has provided no factual basis demonstrating that any alleged failure on the part of

15. While Roney correctly states that Federal Aid Project construction files may be destroyed three years after submission of the final payment voucher provided there is no anticipated or pending litigation, he fails to present evidence, other than his own self-serving declaration statement, that these construction files would have allowed him to identify witnesses who would have seen him at the job site on the days in question and, moreover, that the files would have verified that he worked on the days in question. (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 97–100; Pl.'s Decl. of 6/7/05 at ¶¶ 2–4, Pl.'s Exs. 1 & 2.) In fact, Roney only contends that "[t]he contract project diary, field correspondence files, disciplinary files and/or the inspector's daily reports *would likely* have assisted Roney in verifying his presence on the job sites on July 10–11, 1999." (Pl.'s LR56.1(b)(3)(B) St. ¶ 98.)(Emphasis added.) Moreover, Roney fails to establish whether the subject construction project was indeed a Federal Aid Project which would warrant retaining construction files for three years.

It also bears noting that Shahatit reported to Schmidt that his daily calendar sheets for the period covering May 1, 1999 through July 14, 1999 had been stolen from his office. (Pl.'s LR56.1(b)(3)(B) St. ¶ 101.) Shahatit wrote the following memorandum regarding the incident to Schmidt:

Sometime during 3:35 p.m. on 7/14/99 and 7:00 a.m. on 7/15/99, Gul Roney stopped in the field office and packed a few of his job boxes from his office and stopped in my office and stole my Daily Calendar papers dated between 5–1–99 and 7–14–99. These papers contained Gul Roney's actual time worked on the job. (*Id.*)

Thus, while Shahatit indicated he did have other records of the actual time Roney worked on the subject job, it is unclear from the record whether the names of the other employees that worked on the job as well as the actual dates and times would have been available.

IDOT to follow its disciplinary policies and procedures was the result of IDOT retaliating against him for engaging in protected activity.[16] *See e.g., Haywood,* 121 F.3d at 1071; *Patterson,* 150 F.3d at 724; *Fed. Nat'l Mortgage Assoc.,* 1996 WL 361549, at \*3; *see also FDIC,* 781 F.2d at 1267.

■■■ The Court finds Roney's remaining allegations of retaliatory conduct on the part of IDOT without merit because the alleged adverse actions are not "materially adverse" or they are unsupported in the record because they are based on his conclusory, self-serving testimony. Therefore, Roney's allegations that he was watched closely by other Resident Engineers (Def.'s Mem. at 8), had his name removed from a list of Resident Engineers (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 95–96), had his Resident Engineer's mailbox removed (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 95, Def.'s LR56.1(a)(3) St. ¶ 98, Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 225), had his performance evaluations altered and documents removed from his personnel file (Def.'s LR56.1(a)(3) St. ¶¶ 107–10, Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶¶ 57–60, 223), had been threatened with termination because he had not filled out a Statement of Economic Interest (Def.'s LR56.1(a)(3) St. ¶¶ 167–68, Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶¶ 218–22)[17], was subjected to an unwarranted criminal investigation because IDOT reported to the Illinois State Police that he had been

terminated (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 217), was denied unemployment benefits because IDOT reported to the Illinois Department of Economic Security that he had been terminated (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶¶ 226–29), was denied the use of a state vehicle, even though a vehicle was provided to every other Resident Engineer who worked for Schmidt (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 224, Def.'s LR56.1(a)(3) St. ¶¶ 169–72), and was assigned to dangerous paint operations for which he was not trained (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶¶ 230–33) are conclusory and speculative and/or cannot be construed as constituting either adverse employment actions or adverse actions.

Accordingly, Roney has failed to establish a prima facie case of retaliation under the direct method because he cannot demonstrate that he was subjected to adverse employment actions or adverse actions. Thus, even if Roney could establish that the subject adverse employment actions were causally related to his protected activity, IDOT would have taken the same actions anyway. Therefore, even assuming *arguendo* IDOT intended to retaliate against Roney for filing the previous lawsuit, any alleged retaliatory motive would not be the "but-for cause" of Roney's alleged harm.[18] *See e.g., Haywood,* 323 F.3d at 531.

16. Moreover, it bears noting that IDOT's testimony was that (A) Plaintiff was never suspended, rather he chose to resign; (B) since Plaintiff resigned, he was never disciplined; and (C) at the time Plaintiff left IDOT's employment, Plaintiff was still considered to be an employee in good standing. (Plaintiff's LR 56.1(b)(3)(B) st. ¶ 189).

17. The record contains a document which lists those IDOT employees who were required to file a Statement of Economic Interest in 1998. (IDOT 001626.) The document,

however, cannot be considered by the Court because it lacks foundation since it has not been authenticated.

18. Roney alleges he has direct evidence of retaliatory and discriminatory comments. (Pl.'s Resp. at 4 n. 2 & 20.) The Court finds his assertion unavailing because the statement of facts he references are general, conclusory statements which are inadequate to prove retaliatory or discriminatory intent on the part of IDOT. (*See* Pl.'s LR56.1(b)(3)(B) St. ¶¶ 59, 120, 177, 194–95, 197, 212–13.)

## B. INDIRECT METHOD

In the absence of direct evidence, a plaintiff may prove intentional discrimination by establishing a prima facie case under the indirect method established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima facie case of retaliation under the indirect method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Williams*, 361 F.3d at 1031; *Haywood*, 323 F.3d at 531; *Hilt–Dyson*, 282 F.3d at 465; *see also Stone*, 281 F.3d at 644. "Absent direct evidence of retaliation, failure to satisfy any element of the prima facie case proves fatal to the employee's retaliation claim." *Hilt–Dyson*, 282 F.3d at 465.

After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employer's adverse employment action. *Haywood*, 323 F.3d at 531; *Hilt–Dyson*, 282 F.3d at 465. Once the employer presents a legitimate, non-discriminatory reason for the adverse employment decision, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual. *Id.* The burden of persuasion remains at all times with the plaintiff. *Haywood*, 323 F.3d at 531.

▬▬▬ Herein, with regard to the fourth element of the prima facie case, Roney has failed to identify at least one similarly situated individual who was treated more favorably. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004) (to prove intentional discrimination, a plaintiff must prove inter alia that "the employer treated at least one similarly situated individual outside of his protected class more favorably"). Thus, while Roney alleges that Lawrence Pray (hereinafter "Pray"), a Caucasian, was treated more favorably, he has failed to show that Pray is a comparative employee who is similarly situated. (Pl.'s Resp. at 12.) *See e.g., Jordan v. City of Gary, Indiana*, 396 F.3d 825, 835 (7th Cir.2005)("this court has made it clear that in order to be considered similarly situated an employee must be 'directly comparable in all material respects.'")(*quoting Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)). "[A] court must look at all relevant factors, the number of which depends on the context of the case." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002)(quoting *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). "[A] plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Radue*, 219 F.3d at 617. This type of showing normally entails that the "two employees dealt with the same supervisor, were subject to the same standards, and had engaged in conduct without such differentiat-

---

*See e.g., Am. Nat'l Bank and Trust Co. of Chicago v. Alps Elec. Co., Ltd.*, No. 99 C 6990, 2002 WL 484849, *2 (N.D.Ill. Mar. 29, 2002)("[T]he court is not required to scour the record to unearth material factual disputes or evidentiary support for a party's position.")

Because Roney cannot establish that there is a causal connection between his protected

activity and his alleged adverse employment actions, the Court does not need to reach the parties arguments regarding whether the subject adverse actions were temporally proximate to Roney's prosecution of his initial lawsuit. (*See* Def.'s Mem. at 12–13, Pl.'s Resp. at 15–17.)

ing or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 618. Moreover, employees must hold the same or equivalent positions to be similarly situated. *Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir.2001).

■ Roney cannot demonstrate that he was similarly situated to Pray, the only other Resident Technician ET–IV who worked for Schmidt in the Bureau of Construction, District 1, with respect to performance, qualifications and conduct.[19] *Radue*, 219 F.3d at 617. For example, while Roney avers that Pray received favorable treatment in the form of a higher salary, Roney fails to provide the Court with evidence that shows he and Pray possessed analogous attributes such as similar experience, education, and qualifications that would warrant Roney receiving the same salary as Pray. (Pl.'s Resp. at 12, Pl.'s LR56.1(b)(3)(B) St. ¶ 199.) *Radue*, 219 F.3d at 617–18. Importantly, it bears noting that Pray was hired by IDOT almost two years [20] before Roney so Pray may have commanded a higher salary based on the number of years he worked for IDOT. (Pl.'s Ex. 16 at Doc. No. 003559.) Moreover, while Roney contends that Pray worked in the capacity of a Resident Engineer on four projects with a total contract value of $11,527,903.00, while Roney did not work on any projects in this capacity, Roney again fails to demonstrate that he and Pray were similarly situated with respect to experience, education and qualifications. (Pl.'s Resp. at 12, Pl.'s LR56.1(b)(3)(B) St. ¶ 199.) Again, the fact

that Pray had almost two additional years of work experience with IDOT may have rendered him better suited to work on the four projects.

Importantly, Roney fails to establish that he and Pray were similarly situated with respect to conduct. Notably, while the record clearly shows IDOT was concerned about Roney's job performance and behavior, there is no similar evidence with respect to Pray indicating that IDOT had concerns about Pray's performance or his ability to get along with his co-workers. Accordingly, because Roney cannot show that Pray was materially comparable in terms of his conduct, Roney cannot be viewed as being similarly situated to Pray. *See e.g., Radue*, 219 F.3d at 617–18 (similarly situated entails a showing that "two employees ... had engaged in conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir.1994)(substantial similarity requires a showing that the ostensibly similar employees conducted themselves in a corresponding fashion).

■ Roney further asserts that the seven other employees who were promoted to Resident Technician ET–IV at the same time as he was in 1992 were treated more favorably with respect to job assignment [21], overtime policy, the Statement of Economic Interest, the performance plan/evaluation process and the personnel policies manual. (Pl.'s Resp. at 13–15.) He avers that he was subject to the same IDOT policies and procedures with respect to project assignment, salary and overtime as

19. Roney admits that Pray is the only other Engineering Technician ET–IV in the Bureau of Construction, District 1, who worked for Schmidt. (Pl.'s LR56.1(b)(3)(B) St. ¶ 199.)

20. Pray was hired on August 15, 1977 and Roney was hired on May 21, 1979. (Pl.'s Ex. 16 at Doc. No. 003559.)

21. Roney avers that he was the only Resident Technician ET–IV (of the eight employees who were promoted in 1992) who performed inspection duties and did not work as a Resident Engineer. (Pl.'s Resp. at 13.)

these seven employees. (Pl.'s Dec. of 6/7/05 at ¶ 13.) In asserting his position, however, Roney has again failed to demonstrate that he is similarly situated to these seven other employees (which includes Pray) because he has not produced any evidence that they are directly or materially comparable with respect to performance, qualifications, and conduct. *Jordan*, 396 F.3d at 835; *Radue*, 219 F.3d at 617. Moreover, Roney has admitted that none of these employees (other than Pray) worked for Schmidt. (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 199–200.) Therefore, Roney is not similarly situated to the subject employees.[22] *Radue*, 219 F.3d at 618 ("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently."); *see also Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir.1998)(upholding the entry of summary judgment against a Title VII plaintiff who had presented only his own uncorroborated, conclusory statements that similarly situated co-workers were treated differently); *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 446 (7th Cir.1997)(same).

Accordingly, because Roney cannot establish the third[23] and fourth elements of the prima facie case of retaliation under the indirect method, IDOT is entitled to

summary judgment on this claim.[24] *See e.g., Hilt–Dyson*, 282 F.3d at 465 ("failure to satisfy any element of the prima facie case proves fatal" to a plaintiff's claim).

## II. NATIONAL ORIGIN DISCRIMINATION CLAIM

Under Title VII, it shall be unlawful for an employer "... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... national origin." 42 U.S.C. § 2000e–2(a)(1). In order to prevail on an employment discrimination claim under Title VII, a plaintiff must show that the employer had an intent to discriminate; such a showing may be made directly, or indirectly, through the use of an inferential burden-shifting method. *Rhodes v. Illinois Dep't of Transportation*, 359 F.3d 498, 504 (7th Cir.2004).

### A. DIRECT METHOD

Direct evidence of discrimination "is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir.2003)(*citing Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir.2003)); *see also Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir.1997). In short, "[d]irect evidence essentially requires an admission

22. Roney further avers that he was treated differently than J. Patel (Indian), Balakrishnan (Indian), Altiti (national origin not in record), Shahatit (Jordanian) and Alhamed (Palestinian), Ferraro (Caucasian), Weaver (Caucasian) and Budzinski (Caucasian) with regard to overtime work. (Pl.'s Resp. at 14–15.) Roney, however, has provided no basis for comparison of these employees so he cannot be viewed as being similarly situated.

23. As discussed *supra* in Section I(A), Roney has failed to establish that he was subjected to

adverse employment actions and, moreover, many of his alleged adverse actions have no support in the record.

24. Because Roney has failed to state a prima facie case of retaliation, the Court does not need to reach the issue of pretext. *See e.g., Cowan*, 123 F.3d at 445 ("We need not reach the issue of pretext, as plaintiff has failed to state a *prima facie* case of discriminatory discharge under *McDonnell Douglas*.")(emphasis in original); *see also Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir.1998).

by the decisionmaker that his actions were based on the prohibited animus." *Radue,* 219 F.3d 612, 616(*citing Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994)). Thus, a proffer of direct evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Cowan v. Glenbrook Security Services, Inc.,* 123 F.3d 438, 443 (7th Cir.1997)(*quoting Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir.1989)).

 Direct evidence can also be proven by constructing a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination on the part of the decisionmaker.[25] *Rhodes,* 359 F.3d at 504 (*citing Troupe,* 20 F.3d at 737); *Volovsek v. Wisconsin Dep't of Agriculture, Trade and Consumer Protection,* 344 F.3d 680, 689 (7th Cir.2003)(*citing Rogers,* 320 F.3d at 753). The circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action" *Rhodes,* 359 F.3d at 504 (*quoting Adams v. Wal–Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir.2003)) and be "directly related to the employment decision." *Venturelli v. ARC Community Services, Inc.,* 350 F.3d 592, 602 (7th Cir.2003)(*quoting Gorence v. Eagle Food Centers, Inc.,* 242 F.3d 759, 762 (7th Cir.2001)).

 The Court finds that Roney has failed to establish national origin discrimination under the direct method because, as discussed in footnote 16 of this opinion, the statement of facts he references are general, conclusory statements which are inade-

quate to prove discriminatory animus on the part of IDOT. (Pl.'s Resp. at 4 n. 2 & 20; *see* Pl.'s LR56.1(b)(3)(B) St. ¶¶ 59, 120, 177, 194–95, 197, 212–13.) Moreover, Roney's asserted adverse employment actions do not rise to the level of that which constitutes a convincing mosaic of intentional discrimination because as discussed *supra* the subject adverse employment actions do not constitute adverse actions or are unsupported by any evidence in the record. Accordingly, Roney's national origin discrimination claim under the direct method is unavailing.

## B. INDIRECT METHOD

In the absence of direct or circumstantial evidence, a plaintiff may show discriminatory intent through the indirect method of proof. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* indirect method of proof requires that the plaintiff first establish a prima facie case of discrimination. *Id.* Under that framework, a plaintiff is required to establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) the employer took an adverse employment action against him; and (4) his employer treated similarly situated individuals outside of the protected class more favorably. *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 299 (7th Cir.2004); *Little,* 369 F.3d at 1011; *Brummett v. Lee Enterprises, Inc.,* 284 F.3d 742, 744 (7th Cir.2002).

If the plaintiff establishes a prima facie case, the employer must then articulate a

**25.** Circumstantial evidence may consist of one of the following types of evidence: "(1) a mosaic of evidence which, taken together, would permit a jury to infer discriminatory intent; (2) comparative evidence showing that employees similarly situated to the plaintiff other than in the protected characteristic received systematically better treatment; and

(3) pretext evidence, where the plaintiff is qualified for and fails to receive the desired treatment, and the employer's stated reason for the difference is unworthy of belief." *Piraino v. Int'l Orientation Resources, Inc.,* 84 F.3d 270, 274 (7th Cir.1996)(*citing Troupe,* 20 F.3d at 736).

legitimate, nondiscriminatory reason for its employment decision., 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. Once the employer provides a legitimate reason for its employment decision, the burden shifts back to the plaintiff to establish that the employer's proffered reason is pretextual. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207; *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806–07 (7th Cir.1999). The burden of persuasion remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

For the same reasons discussed *supra* in Section I(A) and I(B) of this opinion, Roney cannot establish the third and fourth elements of the prima facie case. Accordingly, Roney cannot survive summary judgment on his national origin discrimination claim under the indirect method.[26]

### III. HOSTILE ENVIRONMENT CLAIM

Harassment is actionable under Title VII when it is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav.*

Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(*quoting Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). "Whether the harassment rises to this level turns on a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806–07 (7th Cir.2000)(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). A plaintiff who brings a hostile environment claim "must establish that the workplace was both subjectively and objectively offensive." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005) (citations omitted). Thus, "[a] workplace is objectively offensive when a reasonable person would find it hostile or abusive considering all of the circumstances" and "[i]t is subjectively hostile when the plaintiff actually perceives it as such." *Id.* at 1047–48 (citations omitted).

■■■ Herein, Roney has failed to establish that he was subjected to a hostile environment because as discussed *supra* the adverse employment actions he alleges either do not constitute adverse actions or they have no basis in fact as demonstrated

---

**26.** Because Roney has failed to state a prima facie case of national origin discrimination, the Court does not need to reach the issue of pretext. *See e.g., Cowan*, 123 F.3d at 445; *see also Cianci*, 152 F.3d 723, 728.

Furthermore, in his Second Amended Complaint, Roney alleges a disparate treatment claim asserting that IDOT engaged in discriminatory practices against foreign-born engineers. (2nd Am.Complt.¶¶ 19–20.) Roney specifically alleges that foreign-born engineers within District One's Bureau of Construction (1) received lower salaries and pay increases than native-born engineers, (2) were less likely to be promoted than native-born engineers, (3) were disciplined more often

than native-born engineers, and (4) were assigned to choice projects more often than native-born engineers. (*Id.* ¶ 19(a)-(d).) Moreover, Roney alleges that after he was constructively discharged in November of 1999, IDOT officials, including Rollins harassed Mukeshkumar Patel (Indian) and Shahnawaz Qureski (Pakastani). (Pl.'s LR56.1(b)(3)(B) St. ¶ 234.) Again, as stated throughout this opinion, Roney has failed to produce the requisite evidence to support his allegations. (*See* Def.'s LR56.1(a)(3) St. ¶¶ 173–88.) Accordingly, his own self-serving, conclusory testimony with regard to his alleged disparate treatment claim is not enough to survive summary judgment.

by the evidence in this case. Therefore, Roney cannot establish that he was subjected to harassment that was sufficiently severe or pervasive to alter the conditions of his employment which would have resulted in an abusive work environment. Moreover, he cannot establish that his workplace was objectively offensive because a reasonable person would have viewed IDOT's actions as being appropriate given its concerns with Roney's work-related performance and behavior.

■ Accordingly, the Court finds Roney's hostile work environment claim cannot stand.[27]

## CONCLUSION [28]

In view of the foregoing, IDOT's motion for summary judgment is granted and the cause is dismissed with prejudice.

■

27. Because Roney has failed to demonstrate that he was subjected to a hostile work environment, the Court does not need to reach his constructive discharge claim. *(See* Def.'s Mem. at 10, Pl.'s Resp. at 9–12, Def.'s Reply at 15–19.) *See e.g., Williams,* 361 F.3d at 1034 ("[w]orking conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because in the ordinary case an employee is expected to remain employed while seeking redress.") (citation omitted.) Thus, in addition to those conditions required to establish a hostile work environment, a plaintiff must make a further showing: "[He] must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Pennsylvania State Police v. Suders,* 542 U.S. 129, ——, 124 S.Ct. 2342, 2347, 159 L.Ed.2d 204, 211 (2004). With regard to Roney's constructive discharge claim, it bears noting that on the day he received the notice of suspension pending discharge, he submitted his letter of resignation and he did not did not file a grievance or challenge the notice of suspen-

sion via the administrative process available within IDOT. (Def.'s LR56.1(a)(3) St. ¶ 164.) *See e.g., Ulichny v. Merton Comm. Sch. Dist.,* 249 F.3d 686, 704 n. 16 (7th Cir.2001)("[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.") (citation omitted). Moreover, in his letter of resignation, he did not state why he was resigning or that IDOT had retaliated and discriminated against him which ultimately lead to his constructive discharge. (*Id.* ¶ 165.)

28. The Court finds that certain other issues and arguments made in the Second Amended Complaint, but which are not addressed in the summary judgment motion are also unavailing and not necessary to reach in this opinion.

In view of the Court's ruling, it is deemed unnecessary to consider Roney's and IDOT's other arguments raised herein and, moreover, it is unnecessary for the Court to rule on IDOT's Motion to Strike, which is therefore terminated without prejudice as moot.